Filed 6/24/15  P. v. Williams CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SYLVESTER FRANK WILLIAMS,<br><br>    Defendant and Appellant. | H040681<br>(Santa Clara County<br>Super. Ct. No. C9925466) |

The Three Strikes Reform Act of 2012 (hereafter the Act or Proposition 36) created a post conviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies.  If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), [1] he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

On November 26, 2012, after the Act went into effect, defendant Sylvester Frank Williams,[2] an inmate serving a term of 25 years to life following conviction of a felony (§ 314.1) that was not violent as defined by section 667.5, subdivision (c) or serious as

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] In all his filings with the court defendant uses the name Sylester Williams. However, most of the court documents associated with defendant's case use the name Sylvester Williams.

defined by section 1192.7, subdivision (c), filed a petition for recall of sentence and request for resentencing under the Act.[3]

Subsequently, on February 7, 2014, finding defendant "poses an unreasonable risk of danger to public safety" should he be resentenced, the trial court denied defendant's petition.

Defendant filed a timely notice of appeal.[4]

In essence, defendant claims that the lower court overrode the voters' intent in denying his petition because Proposition 36 reversed the presumption that the original three strikes law created—life sentences—in favor of second-strike sentences; that equal protection principles forbid the heightened standard applied to already sentenced third-strike prisoners; that Proposition 36 creates a mandatory presumption in favor of a sentence reduction, which the prosecution must rebut by proving an unreasonable risk of violence; and that under *Apprendi*,[5] the risk assessment hearing must be in accordance with the rules of evidence and a jury must find dangerousness beyond a reasonable doubt. We are not persuaded by any of defendant's arguments and affirm the lower court's decision denying defendant's petition for resentencing.

---

[3] Defendant submitted an informal request dated November 19, 2012, seeking various documents in which he requested resentencing under the provisions of section 1170.126. The lower court construed his request, which was filed on November 26, 2012, as a petition brought under the authority of section 1170.126. The lower court found that defendant "may qualify for resentencing under the provisions of the Three Strikes Reform Act." Accordingly, the court appointed the public defender to represent defendant and set a briefing schedule.

[4] In *Teal v. Superior Court* (2014) 60 Cal.4th 595, our Supreme Court held that the denial of a motion for recall and resentencing is an appealable postconviction order. (*Id*. at pp. 599-601.)

[5] *Apprendi v. New Jersey* (2000) 530 U.S. 466.

*Background*

In an unpublished opinion, this court summarized the facts of defendant's conviction for indecent exposure.[6] We explained that following a court trial defendant was convicted of a felony violation of section 314. The court found true allegations that defendant had suffered five prior felony convictions or strikes within the meaning of sections 667, subdivisions (b) through (i) and 1170.12 and had served two prison terms within the meaning of section 667 subdivision (b). The lower court denied defendant's motion to strike his prior conviction allegations and sentenced defendant to 25 years to life in prison plus a two-year consecutive term.[7]

According to the transcript of the sentencing hearing, defendant's five prior convictions were for five robberies.

As to the facts underlying defendant's crime of indecent exposure, we explained that defendant exposed himself to three young girls by a closed restroom at Arbuckle Elementary School. Defendant motioned for the girls to come to him; he was fully clothed except his penis was sticking out of his pants. Defendant's hands were on his penis and he was moving them up and down. Defendant lived one-half mile from the school. After his arrest he told the police that he was familiar with the school and that if he had exposed himself it was because he was drunk or high on drugs. He admitted that he had been using alcohol and cocaine for a while before the offense and that alcohol and cocaine increased his sex drive and caused him to do "stupid stuff."

We noted that in 1993, defendant had been convicted of two misdemeanor counts of annoying or molesting a child under the age of 18 and in 1994 was convicted of a

---

[6] We have taken judicial notice of (*People v. Williams* (May 7, 2002, H021986) [nonpub. opn.]).

[7] The court imposed the two-year term for the two prior prison terms he had served (§ 667.5, subd. (b)).

felony count of annoying or molesting a child and a misdemeanor count of indecent exposure.[8]

*Proceedings Below*

On September 23, 2013, counsel for defendant filed a motion to grant defendant's petition on the basis of eligibility alone—that is without a risk assessment hearing[9]—or in the alternative to order a jury trial on the issue of dangerousness. On the same date, defendant's counsel asked the court to make in limine rulings regarding the procedural rules for the section 1170.126 hearing. Counsel argued that the proceeding should be an evidentiary hearing, as opposed to a sentencing hearing, in which the state has the burden of proving that defendant was not entitled to relief for which he was statutorily eligible and the rules of evidence should apply.

On October 11, 2013, the People filed their opposition to defendant's motion for a jury trial.

On October 18, 2013, the court held a hearing to address defendant's motions. The court denied both defendant's motion for a jury trial and his motion for resentencing without a risk assessment hearing. The court determined that the rules of evidence do not apply at a section 1170.126 hearing.

On October 30, 2013, the People filed their opposition to defendant's request for resentencing. Attached to the opposition as exhibits were police records and the probation officer's report in defendant's indecent exposure case, the transcript of the sentencing hearing at which the court imposed a 25-year-to-life sentence, this court's unpublished opinion on appeal, a report documenting Dr. Vicky Campagna's assessment of defendant as a result of interviews of defendant that were conducted in 1999, police

---

[8] It was the previous violation of section 314 that elevated defendant's crime to a felony. (§ 314)

[9] Defendant's counsel relied on equal protection principles to argue that defendant could not be subjected to the dangerousness evaluation.

reports documenting the facts underlying defendant's crimes in 1993 for indecent exposure and child molestation, the probation officer's report in that case, police reports documenting other indecent exposures by defendant, the probation officer's report in defendant's grand theft and robbery case, and defendant's prison file, which fills almost two volumes of the clerk's transcript.

Defendant filed a response to the People's opposition on February 5, 2014.

On February 7, 2014, the court conducted a hearing to determine whether defendant's petition for resentencing should be granted.[10] The court indicated that the People had the burden of proof at the hearing. The court noted that defendant's previous motions requesting a jury trial and asking that the rules of evidence apply and that defendant's prison file or C file be excluded from evidence were preserved for appellate review.

The People took the position that resentencing defendant would pose an unreasonable risk of danger to the community, "in particular young children, young females, and older female adults." The People posited that "[i]f past conduct is a predictor of future conduct, releasing the defendant . . . would pose an unreasonable risk to the community. There was nothing . . . in the prison records or even in the defendant's brief to suggest that he is remorseful, that he has accepted responsibility for his conduct and that he was going to be willing or able to change his ways."

The court noted that the People's opposition to defendant's request for resentencing had 11 exhibits attached; the court indicated that it was going to receive all the exhibits into evidence over the objection of defendant's counsel. The court admitted a letter written by one of the victims from defendant's most recent indecent exposure case, again over counsel's objection.

---

**10** Defendant was not present in the courtroom; rather, through counsel he asked the court if he could stay in the holding cell and listen to the proceedings via an audio system.

5

The People pointed out that defendant's criminal history showed he was out of custody for only a few months after his first conviction for indecent exposure and annoying or molesting a child before he committed another indecent exposure; and after he was discharged from that prison commitment he committed another indecent exposure.

The People argued that there were no "rehabilitative efforts" in the prison records or in defendant's briefs to suggest that defendant had changed. Further, defendant's prison record showed that there had been "seven incidents of violence or threatened violence." The People noted, "there's no demonstrated effort to comply with any work orders that may have been done in prison to participate in any programming to demonstrate that . . . he's different from the person that Judge Fernandez sentenced in 2000."

Defendant's counsel countered that defendant was "different. He is 52 years old now. He's very different. And more importantly perhaps is that the law is different." Defendant's counsel pointed out that defendant's strikes were over 25 years old and were "[t]he most basic low level purse snatching you could . . . imagine" where defendant "rode up on a bike and steals a purse off the arm of a woman that was walking on the sidewalk." Counsel went on to argue that defendant's robberies all occurred within a three-month period and "his RAP sheet is devoid of violence."

As to defendant's prison record, his counsel argued that although defendant had 37 disciplinary infractions, he did not have "the most egregious prison record." Counsel conceded that defendant had continued to expose himself in prison, and had engaged in four mutual combat fights, but pointed out that all of his disciplinary infractions had to do with his fear of having a cellmate.

The court told defendant's counsel that what the court was most interested in was defendant's "apparent propensity to commit acts of indecent exposure." In essence, defendant's counsel argued that because of his age defendant was less likely to reoffend

6

and had not received the treatment in prison that he needed, but would be able to receive such treatment if he was released.

The court asked defendant's counsel whether she was suggesting that if upon release defendant committed an indecent exposure, that would not constitute a risk of danger to the public safety. Defendant's counsel conceded that any crime is dangerous to public safety; she believed, however, that the court had to consider whether "there is an increase in risk of violence."

The court indicated that it would recess to consider counsels' presentations. After the recess, the court ruled as follows: "First, the Court recognizes that the People have the burden of proof and that the defendant is entitled to resentencing unless the People present evidence that satisfies by a preponderance of the evidence the Court that a finding in its discretion that the defendant poses an unreasonable risk to public safety currently should preclude him from entitlement to resentencing under our current law. [¶] The Court believes first that with respect to the evidence before the Court, it is more likely than not that the defendant poses a risk to public safety. The Court believes that the defendant particularly poses a risk of committing additional acts of indecent exposure in violation of Penal Code Section 314 if he were to be released from custody and even if he were to continue to remain in custody. [¶] The Court believes that the evidence before it indicating a more than 20 year history of committing acts of indecent exposure an Axis I diagnosis of exhibitionism, the relative recency of the commission of an act of indecent exposure while in custody, all lead the Court to believe that there is a risk that the defendant will continue to commit such acts. The Court believes that a violation of Penal Code section 314 in an active indecent exposure is a crime that places public safety at risk. Even in the abstract, particularly for a defendant[,] however[,] who has a prior conviction and the defendant has more than one, and is therefore, subject to a felony prosecution and is committing acts that the [L]egislature has deemed to be felonious. [¶] Penal Code Section 314 not only impacts the community and the victims of its

7

commission [*sic*] because of the emotional harm that it can cause to a victim of a violation of Penal Code Section 314, but also to the disturbances it causes within our community. The fear that a violation of Penal Code Section 314 instills in the community when it is committed, the fear of victimization, the fear of sexual assault, the fear of child molest, all of this has caused the [L]egislature to deem a violation of Penal Code section 314 to be criminal, to be felonious if committed when there is a prior conviction or under other circumstances to be subject to sex offender registration. For all these reasons the Court has no question that a violation of Penal Code section 314 is a public safety concern. [¶] With respect to this particular defendant, . . . he has particular characteristics with respect to his commission of acts of Penal Code Section 314. His acts have been acts not simply of exposure, but have also included engaging in masturbation, which is not necessary for violation of Penal Code Section 314, the defendant's history includes the victimization of children, has included performance of such acts in and around school grounds, and has continued despite his incarceration with the evidence before the Court of 17 violations within the State Prison of acts amounting to or similar to violations of Penal Code Section 314."

The court continued, "Based on the defendant's repeated conduct, the extensive pattern of conduct, his commission of additional acts of [indecent exposure] while incarcerated, his diagnosis of exhibitionism and the lack of persuasive evidence . . . that there has been any particular progress toward a rehabilitation, the Court . . . believes that the evidence . . . establishes that it is more likely than not that the defendant poses an unreasonable risk of danger to public safety, and that if he were to be resentenced and released, the high likelihood that he would continue to commit [indecent exposures] is so great that to ignore that risk would be unreasonable."

The court discounted the argument by defendant's counsel that defendant's exhibitionism had decreased and would continue to decrease because of his age.[11]  The court stated that the "defendant's likelihood of recidivism with respect to indecent exposure may be minimized given his age and the reference to the diagnostic and statistics manual that has a very brief statement indicating that advanced or increasing age may suggest a decrease in incidents of indecent exposure for a person who has been diagnosed with exhibitionism."  The court stated that it did not believe this to be "concrete scientific evidence."

The court based its ruling "primarily" on the defendant's propensity to commit acts of indecent exposure; however, the court stated that it could not ignore or discount defendant's strike priors and evidence "presented within the prison records of some acts of physical violence" by defendant while in prison.  The court indicated that this evidence alone "would [not] necessarily form the basis of a denial" of resentencing, but that the court "does take it into consideration as part of the totality of the circumstances that the Court must consider."

Accordingly, as noted, the court found that defendant poses an unreasonable risk of danger to public safety and denied his petition for resentencing.

*Applicable Legal Principles*

In order to be eligible for resentencing as a second-strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.  "An inmate is eligible for resentencing if:  [¶]  (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c)

---

[11]  In her response to the People's opposition to resentencing, defendant's counsel wrote that the "DSM" notes that "few arrests are made in the older age groups, which may suggest that [exhibitionism] becomes less severe after age 40."

9

of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e).)

If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second-strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion. " 'Discretion is the power to make the decision, one way or the other.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th

10

148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

As noted, the language of section 1170.126, subdivision (f) expressly provides that the petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk.

Considering the language of subdivisions (f) and (g) of section 1170.126, we conclude that the People have the burden of establishing, by a preponderance of the evidence, *facts* from which a determination that resentencing the petitioner would pose an unreasonable risk of danger to public safety can be made. The reasons that a trial court finds resentencing would pose an unreasonable risk of danger, and the court's weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by facts established by a preponderance of the evidence, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 (*Kaulick*), found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Id*. at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court can base the ultimate determination that resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of

11

establishing that determination itself. Nevertheless, we believe it supports our interpretation of the standard of review.

In sum, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act. Nor is the court's ultimate determination subject to substantial evidence review. Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The *facts or evidence* upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence. If a factor such as that the defendant recently committed a battery, or is violent due to repeated instances of mutual combat, is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

Such a conclusion is consistent with California's noncapital sentencing scheme. Under the determinate sentencing law (DSL) as it existed prior to *Cunningham*,[12] "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' " (*People*

---

[12] *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).

*v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.)  Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid.*).  Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination.  (*Ibid.*; see former Cal. Rules of Court, rule 4.420(b).)  Even after the DSL was reformed and amended in response to *Cunningham*[13] so as to eliminate judicial fact finding in selection of the appropriate term when three possible prison terms are specified by statute, *establishment of facts* by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions.  (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[ ] the term selected.'  [Citations.]  Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]"  (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances.  Such an evaluation "is not equivalent to a

---

**13**  After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "'(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.)  Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

13

factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) Accordingly, it follows that the trial court need not apply a preponderance of the evidence standard, in that it need not find that resentencing the petitioner would, more likely than not, pose an unreasonable risk of danger to public safety. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means more likely than not].)

With this in mind we turn to defendant's arguments as to why the lower court abused its discretion.

*Discussion*

Defendant argues that the lower court overrode the voters' intent by denying his resentencing petition. He bases this assertion on his belief that the original three strikes law created a presumption in favor of life sentences and that Proposition 36 has reversed this presumption in favor of a second-strike sentence. He argues that with the Act the California electorate turned the sentencing scheme upside down by creating a strong presumption that defendants whose third strike was neither serious nor violent would not be sentenced to life in prison.

In essence, defendant argues that sentence reduction under the Act is now the rule or the " 'norm[.]' " As such, he posits that the discretion of the court to refuse sentencing is "narrowly proscribed." He asserts that case law under the old three strikes law now strongly favors recall under Proposition 36 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), should inform the construction and application of section 1170.126, subdivision (f), but with a crucial and substantial twist—a diametrically opposite presumption now guides the sentencing court's decision making. We disagree.

In *Romero*, the California Supreme Court held that trial courts retain discretion to strike, in furtherance of justice under section 1385, subdivision (a), prior felony conviction allegations in cases brought under the three strikes law. (*Romero*, *supra*, at pp. 529-530.) Subsequently, the court clarified, however, that in deciding whether to do

14

so, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Since the three strikes law was intended to restrict trial courts' discretion in sentencing repeat offenders, the state high court determined there were "stringent standards" sentencing courts must follow in order to find a defendant should be treated as falling outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained: "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.] [¶] But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] . . . Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the

15

criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at p. 378.)

As the Fifth District Court of Appeal explained in *People v. Blakely* (2014) 225 Cal.App.4th 1042, the three strikes law has "been variously stated as being ' "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" ' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]." (*Id.* at p. 1054.) Since public safety remains a key purpose of the law under the Act, we reject defendant's assertion that a section 1170.126 decision must be subjected to the same rigorous scrutiny as the granting of a *Romero* motion.

Furthermore, we reject defendant's argument that a second strike sentence is now the "norm"; we are not persuaded that it is any such thing. As noted, the language of subdivision (f) of section 1170.126 reads that a petitioner who meets the eligibility criteria "shall be resentenced [as a second-strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." It is not unreasonable to read this text to mean that a court "shall" impose a second strike sentence unless "at the discretion of the court" the petitioner's original sentence of 25 years to life appears more appropriate because of an unreasonable risk of danger to the public. However, it is equally reasonable to read the text to mean that a court may select one of the two penalties (a second strike sentence or the original life sentence) in the exercise of its discretion, with no presumption in favor of one or the other. "The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1371.)

16

The text of subdivision (f) of section 1170.126 does not plainly indicate that a second strike sentence is the presumptive sentence.

In sum, we do not agree with defendant that Proposition 36 creates a presumption in favor of a second strike sentence. Such a conclusion comports with the plain language of the statute. Moreover, a conclusion resentencing to a second strike term is a generally mandatory presumption from which courts can depart only in extraordinary cases, would run directly contrary to the intent of the voters in passing the Act.

Defendant argues that because a qualified prisoner already serving a determinate term must surmount the risk assessment determination, but this does not exist for those defendants yet to be sentenced, equal protection principles are violated. Thus, in essence, defendant argues that equal protection requires the application of the same standard for recalled sentences as defendants who are currently being sentenced. We reject his claim.

Defendant argues that two sentencing groups are similarly situated for purposes of Proposition 36. Members of both groups have at least two prior convictions for serious and violent felonies as well as a current nonserious, nonviolent offense that would previously have subjected them to a three strikes sentence of 25 years to life.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328; accord, *People v. Wutzke* (2002) 28 Cal.4th 923, 943.)

Defendant is not merely entering the prison system; rather, he has been confined there for a substantial period of time. Nor is he someone who has completed his sentence and now is being subjected to additional confinement. "Instead, [defendant] *was*

17

*properly sentenced* to prison for an indefinite term because he was *properly convicted* (beyond a reasonable doubt, by a unanimous jury) of a third felony after he had committed two prior serious or violent felonies.  It was his third felony conviction which, pursuant to the law in effect at the time, subjected him to an indeterminate sentence.  Now, due to the adoption of the Act, [defendant] may be entitled to a downward modification of this indeterminate term to a determinate second strike sentence.  That he may be denied such downward modification due to a finding of dangerousness based on a preponderance of the evidence does not mean that he would be subjected to indefinite confinement based on this finding.  He is subject to the indeterminate term due to his original third strike sentence; the dangerousness finding would simply deny him a downward modification.  This process does not deny [defendant] his constitutional right to equal protection of the law." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1306, fn.omitted.)

The rational relationship test has been deemed appropriate to an equal protection challenge such as this one.  (*People v. Floyd* (2003) 31 Cal.4th 179, 187-188, 191; *People v. Cruz* (2012) 207 Cal.App.4th 664, 678-680.)  Prisoners are not a suspect class.  The status of being incarcerated is neither an immutable characteristic nor an invidious basis of classification.  (*People v. Cruz*, *supra*, at pp. 675-676, fn. 11.)  Under the rational relationship test, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'  [Citation.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

The discretionary public safety exception to second strike sentencing that is present in section 1170.126, is rationally related to a legitimate state interest.  "It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger to the public." (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 179.)  Since there is a rational relationship between the disparate treatment and a legitimate governmental purpose, the distinction drawn between felony offenders sentenced before and after the Act's effective date does

18

not violate defendant's state or federal equal protection rights. (*Floyd*, *supra*, 31 Cal.4th at pp. 188-191; see also *People v. Cruz*, *supra*, 207 Cal.App.4th at pp. 674-680.)

Defendant argues that Proposition 36 creates a mandatory presumption in favor of a sentence reduction, which the prosecution must rebut by "proving an unreasonable risk of violence." As noted *ante*, we disagree that Proposition 36 creates a mandatory presumption in favor of a sentence reduction. We disagree that the prosecution must prove an unreasonable risk of violence.

" 'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.]' [Citation.] ' "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" ' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014 (*Cervantes*).) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, " 'we look first to the words themselves. [Citations.]' " (*Cervantes*, *supra*, 225 Cal.App.4th at p. 1014.) We give the statute's words " 'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "[accord] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "[S]tatutes or

19

statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Ibid.*)

Although one purpose of the Act was to save taxpayer dollars (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1037), "[i]t is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but *only* to those who were perceived as nondangerous or posing little or no risk to the public." (*Id.* at p. 1038, second italics added.)

The Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by one of our sister courts as follows: "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '. . . to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.] [¶] By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.' " (*People v. Cooper*(1996) 43 Cal.App.4th 815, 823-824.)

20

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when . . . a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

Although the ballot materials concerning Proposition 36 focused on violent criminals, section 7 of the Act provides: This act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes. To condition resentencing denials upon the likelihood of future violence would run contrary to the language of section 1170.126, subdivision (f) and voters' intent, and would not effectuate the purposes of the Act. Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "unreasonable risk of danger to public safety" were read to mean a court must find that the petitioner poses an unreasonable risk of committing another violent crime. The Act was added by the initiative process. Ballot pamphlet arguments have been recognized as a proper extrinsic aid in construing voter initiatives adopted by popular vote. (*People v. Floyd*, *supra*, 31 Cal.4th at pp. 187-188.)

In sum, had voters intended to require a finding of an "unreasonable risk of violence," they would have said so in subdivision (f) of section 1170.126. Furthermore, they would not have afforded the court the power to consider *any* evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of section 1170.126. That a crime (or criminal) can constitute a danger to public safety without being violent is too

21

obvious to dispute.  (See, e.g., *People v. Hughes* (2002) 27 Cal.4th 287, 355; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 317.)

Finally, defendant argues that he has a *right* to a jury trial under the United States Constitution's Sixth Amendment and a finding of dangerousness beyond a reasonable doubt on downward resentencing.  We disagree.

The United States Supreme Court has clarified that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications.  (*Dillon v. United States* (2010) 560 U.S. 817, 828 [taking the original sentence as given, any facts found by a judge at a modification proceeding do not serve to increase the prescribed range of punishment].)  California appellate courts have applied this principle to petitions for resentencing under Proposition 36 and more specifically to determinations of eligibility for resentencing:  "*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act."  (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1039.)

Contrary to defendant's argument, nothing in *Alleyne v. United States* (2013) 570 U.S. __ [133 S.Ct. 2151] supports his views.  As described by our Supreme Court, in *Alleyne* "the United States Supreme Court held that the federal Constitution's Sixth Amendment entitles a defendant to a jury trial, with a beyond-a-reasonable-doubt standard of proof, as to 'any fact that increases the mandatory minimum' sentence for a crime."  (*People v. Nunez & Satele* (2013) 57 Cal.4th 1, 39, fn. 6.)  The denial of a recall petition does not increase the mandatory minimum sentence for a defendant's crime.

As the court explained in *Kaulick*, "[t]he retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate.  It does not provide for wholesale resentencing of eligible petitioners.  Instead, it provides for a proceeding where the original sentence may be modified downward.  Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues.

22

Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1304-1305.)

Simply put, a denial of an inmate's petition does not increase the penalty to which that inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. That the denial is based on a determination of dangerousness does not change that conclusion.

With all the foregoing in mind, we conclude that defendant has not met his burden on appeal of establishing that the trial court's ruling exceeds the bounds of reason. Thus, we find no abuse of discretion.

The lower court found that defendant poses an unreasonable risk of danger to public safety because of the likelihood that he will continue to commit acts of indecent exposure. The court based this finding on defendant's 20-year history of committing these acts, some of which occurred while defendant was incarcerated. Defendant's prison record is replete with rules violations for masturbation and indecent exposure, threats to kill other inmates, refusing to follow rules, and mutual combat. This record shows that there has been no progress toward rehabilitation. Speculation that defendant could be helped with therapy and proper oversight does not outweigh the People's evidence that even while incarcerated defendant cannot and has not followed the rules.

It is quite apparent that the trial court was aware it was required to find defendant *currently* posed an unreasonable risk to public safety. The trial court's ruling conveyed reasoning that established a nexus between the evidence before it and current dangerousness. The trial court's ruling here was more than adequate for meaningful appellate review, and "the application of reasoned analysis" is apparent from its ruling. (*In re Young* (2012) 204 Cal.App.4th 288, 306.) Moreover, the court did not merely rely on long-ago crimes, although defendant's criminal record, which is extensive, certainly figured into its determination. As the People point out, life outside of prison walls requires a measure of self-control that defendant has never demonstrated he possesses

23

either in or out of prison.  The fact that defendant is now older and his crimes for robbery remote in time weighs in favor of defendant only if since those crimes were committed he has been crime-free, in a cleansing period of rehabilitation after he has had the opportunity to reflect upon the error of his ways.  Defendant has done no such thing.

Since the trial court considered the statutory factors in section 1170.126, subdivision (g) in exercising its discretion (trial court may consider petitioner's criminal conviction history and the petitioner's disciplinary record and record of rehabilitation while incarcerated) and made a reasoned argument as to why the evidence did not support resentencing defendant, we must uphold the decision even if we might have exercised our discretion differently.

We reiterate that "[w]here, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]' [Citation.]"  (*People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124-1125, italics omitted.)  We cannot say that the lower court's decision was arbitrary, capricious, or patently absurd.

## *Disposition*

The order denying defendant's petition to recall his sentence (§ 1170.126) is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.