Filed 4/24/14

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Petitioner,<br><br>            v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>      Respondent;<br><br>JOSE ANGEL MARTINEZ,<br><br>      Real Party in Interest. | F066967<br><br>(Super. Ct. No. VCF035601-94)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

Tim Ward, District Attorney, Anthony Fultz, Assistant District Attorney, Jill Icenhower, Douglas Rodgers, and Samantha Arnerich, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michael B. Sheltzer, Public Defender, Lisa Bertolino, Assistant Public Defender, and Angela Marie Krueger, Deputy Public Defender, for Real Party in Interest.

-ooOoo-

## INTRODUCTION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act [or Proposition 36]).[1]  The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment.  Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  (§§ 667, 1170.12.)  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

Shortly after the Act went into effect, real party in interest Jose Angel Martinez, an inmate serving a 25-years-to-life term following conviction of felonies that were not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence, seeking resentencing under the Act.  The trial court determined Martinez qualified (was eligible) for resentencing and set the matter for further hearing on the issue of whether resentencing Martinez would pose an unreasonable risk of danger to public safety.  The People now seek review of the trial court's eligibility determination.

---

**1**    Further statutory references are to the Penal Code unless otherwise stated.

2.

In this opinion, we hold that an inmate serving a 25-years-to-life term under the three strikes law may be found to have been "armed with a firearm" in the commission of his or her current offense, so as to be disqualified from resentencing under the Act, even if he or she did not carry the firearm on his or her person. We further hold the People are entitled to writ review of the trial court's contrary conclusion. Accordingly, we grant the People's petition for a writ of prohibition and/or mandate.

## FACTS AND PROCEDURAL HISTORY

On December 2, 1994, a parole agent and sheriff's deputy went to Martinez's residence to perform a parole search of the premises. Upon arrival, they found Martinez in the kitchen, displaying symptoms of being under the influence of a controlled substance. Drug paraphernalia was found on Martinez's person, a bindle of heroin was found lying on a table in front of Martinez, a sawed-off shotgun and marijuana were found either in the same room as Martinez or in one of the bedrooms, and another sawed-off shotgun and a hunting rifle were found in a closet of the residence.[2]

In June 1997, a jury convicted Martinez of possession of two deadly weapons, both sawed-off shotguns (former § 12020, subd. (a), see now § 33215; counts 1-2); possession of heroin (Health & Saf. Code, § 11350, subd. (a); count 3); possession of a controlled substance while armed with a loaded, operable firearm (*id*., § 11370.1, subd. (a); count 4); possession of a firearm by a felon (former § 12021, subd. (a)(1), see now § 29800, subd. (a); count 5); and three misdemeanors. Martinez was found to have suffered either two or three prior "strike" convictions (§ 667, subds. (d) & (e)) and to

---

**2** The probation officer's report stated the first shotgun was found in the same room as Martinez. Apparently, testimony at the preliminary hearing — a transcript of which is not before us — showed the gun was found in a bedroom.

have served three prior prison terms (§ 667.5, subd. (b)).[3] On July 28, 1997, he was sentenced to 25 years to life plus three years in prison.

On or about December 20, 2012, Martinez petitioned the trial court for a recall of sentence and a new sentencing hearing pursuant to section 1170.126. Martinez alleged that he qualified to have his sentence recalled because he met all three eligibility criteria set out in subdivision (e) of that statute. The People opposed the petition on the ground Martinez did not qualify because, in connection with his current offenses, the prosecution pled and proved Martinez was armed with a firearm or deadly weapon.[4] In response, Martinez argued: (1) The electorate — most of whom were lay persons — would have understood the phrase "armed with a firearm" to refer to a crime in which the offender was carrying a firearm, not one in which the firearm was in a separate room; (2) Because Martinez's conviction for violating Health and Safety Code section 11370.1, subdivision (a) could only have been based on the heroin found in the kitchen and not the marijuana found in the bedroom, the jury necessarily viewed arming as including constructive possession of the firearm; and (3) Since the "armed" exclusion included in Proposition 36 was narrower than the "armed" element of the statute Martinez violated, the conviction under Health and Safety Code section 11370.1, subdivision (a) did not disqualify him from relief under section 1170.126.

On March 21, 2013, a hearing was held on the petition. After argument on the issue, the court stated: "I'm going to accept the defendant's position … and find that armed for purposes of Prop 36 means actual possession rather than constructive

---

[3]    Three prior strike convictions were alleged in count 1 of the information filed January 3, 1995, but only two prior strike convictions were alleged with respect to the remaining felony counts.

[4]    The People's opposition was filed in a different case. The two cases were heard together.

possession of the firearm ….  So I'm going to find that … Mr. Martinez [is] not excluded."  The matter was then set for a resentencing hearing.

The People petitioned this court for a writ of prohibition and/or mandate overturning the trial court's ruling.  They further requested that we stay the resentencing hearing.  On April 9, 2013, we issued an order to show cause why the relief prayed for should not be granted, and stayed proceedings in the trial court pending our further order.

## DISCUSSION

### I.  The People are entitled to writ review of the trial court's ruling.

Martinez contends the People should be barred from seeking writ relief and their petition dismissed.  "As a general rule, the People may not seek an extraordinary writ in circumstances where the Legislature has not provided for an appeal.  [Citations.]" (*People v. Superior Court* (*Vidal*) (2007) 40 Cal.4th 999, 1008 (*Vidal*).)  "[T]he People have no right of appeal in criminal cases except as granted by statute.  [Citations.] Statutory restriction of the People's right to appeal in criminal cases does not merely establish a procedural limitation to allocate appellate review between direct appeals and extraordinary writs.  It substantively limits review of trial court determinations in criminal trials.  [Citation.]"  (*People v. Kirk* (1992) 7 Cal.App.4th 855, 859-860.)

As Martinez notes, the Act itself does not provide the People with a right of appeal.  If section 1238 gives them such a right, though, the Act need not expressly do so. (See *Vidal*, *supra*, 40 Cal.4th at p. 1009.)  Section 1238 provides, in relevant part: "(a) An appeal may be taken by the people from any of the following:  [¶] … [¶]  (5) An order made after judgment, affecting the substantial rights of the people."

Had the trial court proceeded to sentence Martinez as a second strike offender, section 1238, subdivision (a)(5), would apply.  (See *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1294-1295 & fn. 14 (*Kaulick*).)  We conclude this provision applies also to the eligibility finding.

5.

The trial court's consideration of a petition under the Act is a two-step process. First, the court determines whether the petitioner is eligible for resentencing. If the petitioner is eligible, the court proceeds to the second step, and resentences the petitioner under the Act unless it determines that to do so would pose "an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

Here, we are concerned with the first step of the process — the initial eligibility determination. A trial court's ruling at this step does not change a petitioner's sentence, and so is not appealable by the People under subdivision (a)(10) of section 1238.[5] Nevertheless, we conclude it constitutes "[a]n order made after judgment, affecting the substantial rights of the people." (§ 1238, subd. (a)(5).) It is an order made after judgment, since, in a criminal case, judgment is synonymous with the imposition of sentence. (*Fadelli Concrete Pumping, Inc. v. Appellate Department* (1995) 34 Cal.App.4th 1194, 1200.) Sentence was imposed for Martinez's current offenses in 1997. We believe it also affects the People's substantial rights: An initial eligibility determination affects whether the trial court will exercise resentencing discretion. This is not an idle exercise as far as the People are concerned; where, as here, the trial court determines the inmate is eligible, the burden shifts to the prosecution to establish dangerousness (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1301 & fn. 25) and, if the prosecution does not carry its burden, resentencing the inmate as a second strike offender necessarily follows (§ 1170.126, subd. (f); *Kaulick*, *supra*, at p. 1299). Thus, an initial finding of eligibility affects enforcement of the judgment (in which the People clearly

---

**5** That subdivision permits the People to appeal from "[t]he imposition of an unlawful sentence," and defines "unlawful sentence" as "the imposition of a sentence not authorized by law or the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction." (§ 1238, subd. (a)(10).)

have a substantial interest), and it affects the inmate's status with relation to the judgment already imposed. (See *People v. Benavides* (2002) 99 Cal.App.4th 100, 104, 105.)

Accordingly, we conclude the People have the right to appeal the eligibility finding under section 1238, subdivision (a)(5).[6] We further conclude the trial court's order is properly challenged by writ petition. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1295-1296.) Significantly, an appeal is not a plain, speedy, or adequate remedy under the circumstances. The People and Martinez both have a substantial interest in prompt resolution of the matter, and this is best accomplished by the more expedited writ review.[7]

Even if we were to conclude the People had no right of appeal at this juncture of the proceedings, we would still find writ review appropriate. "If the prosecution has not been granted by statute a right to appeal, review of any alleged error may be sought by a petition for writ of mandate *only* when a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused. [Citations.] Mandate is not available to the prosecution for review of 'ordinary judicial error' [citation] or even 'egregiously erroneous' orders [citations] ...." (*People v. Superior Court* (*Stanley*) (1979) 24 Cal.3d 622, 625-626, fn. omitted.)

---

**6** The issue whether *denial* of a petition for recall of sentence, based on a finding the inmate does not meet threshold eligibility requirements, is appealable by the *inmate* is currently pending before the state Supreme Court. (E.g., *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [concluding denial is nonappealable because Act confers no substantial rights on eligibility issue]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [concluding denial is appealable because Act confers a "substantial right"].)

**7** Allowing proceedings to run their course and having the People appeal if Martinez is resentenced as a second strike offender is particularly inadequate: Martinez would almost certainly be released from custody before an appeal could be decided. It is not in the People's interest (or that of society) to have an ineligible person out of custody, and it is not in Martinez's interest to be allowed to start rebuilding his life, only to be returned to prison if the appeal goes against him.

"Some courts have taken an expansive view of the phrase 'excess of jurisdiction,' holding that where the law allows a court to act in only one way, the court exceeds its jurisdiction by doing anything else and the error can be corrected through writ review. [Citations.] Other courts have taken a restrictive stance, holding that there is no basis for writ review unless the trial court acts without subject matter or personal jurisdiction. [Citations.]" (*People v. Superior Court* (*Mitchell*) (2010) 184 Cal.App.4th 451, 456.) "An act that exceeds a grant of statutory power qualifies under both lines of cases for writ review." (*Id*. at p. 458.)

Section 1170.126 grants the trial court the power to determine an inmate serving 25 years to life as a third strike offender is eligible for resentencing as a second strike offender *only* if, as an initial matter, the inmate satisfies the three criteria set out in subdivision (e) of the statute. Those criteria are: (1) The inmate is serving an indeterminate term of life imprisonment imposed under the three strikes law for a conviction of a felony or felonies that are not defined as serious and/or violent under section 667.5, subdivision (c) or section 1192.7, subdivision (c); (2) The inmate's current sentence was not imposed for a controlled substance offense with a specified weight enhancement, an enumerated sex offense, or an offense during the commission of which "the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person"; and (3) The inmate has no prior convictions for certain specified offenses. (§ 1170.126, subd. (e); see §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) If the inmate does not satisfy one or more of the criteria, section 1170.126 grants the trial court no power to do anything but deny the petition for recall of sentence. In the present case, as we shall explain, Martinez was "armed with a

firearm" during commission of his current offense.  Accordingly, by finding him qualified for resentencing, the trial court exceeded its grant of statutory power.[8]

## II. Martinez was "armed with a firearm" within the meaning of the Act, and so was disqualified from resentencing.

Insofar as we are concerned, Martinez's current conviction was for a violation of Health and Safety Code section 11370.1, subdivision (a).[9]  This statute proscribes the unlawful possession of any amount of a substance containing specified controlled substances "while armed with a loaded, operable firearm," and defines "armed with" as meaning "having available for immediate offensive or defensive use." (*Ibid*.)  This definition is consistent with the well-established construction of "armed" given to firearm enhancements such as section 12022.  (See, e.g., *People v. Pitto* (2008) 43 Cal.4th 228, 236; *People v. Bland* (1995) 10 Cal.4th 991, 995, 997; *People v. Mendival* (1992) 2 Cal.App.4th 562, 573-574; cf. *People v. Singh* (2004) 119 Cal.App.4th 905, 912.)  In order to be "armed" within the meaning of these statutes, a defendant need not physically carry the firearm on his or her person.  (See, e.g., *People v. Smith* (1992) 9 Cal.App.4th

---

[8]      Martinez points to subdivision (f) of section 1170.126, which states in part: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e)."  Martinez suggests this language gives the trial court specific authority to decide whether an inmate is qualified, so that, having done so, the court cannot then be found to have exceeded the authority it was directly granted by statute.  We do not read the language as giving the trial court authority to decide an inmate is qualified when that inmate does not meet all the eligibility criteria specified in subdivision (e) of section 1170.126.  Rather, subdivision (f) of the statute sets out the procedure a trial court is to follow upon receipt of a petition under section 1170.126.

[9]      The People have not, either here or in the trial court, contended Martinez is disqualified from resentencing by any of his other current convictions.  Accordingly, we have no occasion to (and do not) decide whether unlawful possession of a deadly weapon or possession of a firearm by a felon constitute disqualifying convictions.

9.

196, 204; *People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1661-1663; *People v. Mendival, supra,* 2 Cal.App.4th at pp. 573-574.)[10]

The question before us is whether, during the commission of his violation of subdivision (a) of Health and Safety Code section 11370.1, Martinez "was armed with a firearm" within the meaning of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii). If he was not, then he is qualified for resentencing under the Act. (§ 1170.126, subd. (e)(2).) As previously described, the trial court ruled that "armed with a firearm" for purposes of the Act means actual possession, i.e., carrying the firearm on one's person. The issue is one of the interpretation of a statute and its applicability to a given situation, a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)[11]

---

[10]    The People assert, in their supplemental letter brief, that *People v. White* (2014) 223 Cal.App.4th 512, petition for review pending, petition filed March 10, 2014, could be read to limit exclusion from resentencing to those defendants who physically possessed a firearm during the commission of their commitment offense. We do not read *White* so narrowly. White was convicted of possession of a firearm by a felon and the issue was whether he fell within the exclusion of having been "armed with a firearm." (*Id*. at pp. 519, 520.) The *White* court found the "armed-with-a-firearm exclusion" applied because the record showed the defendant "was in physical possession of a firearm" and, therefore, had "ready access" to it. (*Id*. at pp. 523-524.) The *White* court did not hold physical possession was the only circumstance in which a defendant could be found to be armed with a firearm within the meaning of section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii).

[11]    We are not confronted in this case with vicarious arming, which exists when a defendant who is not personally armed is a principal in a crime and another principal is armed, possibly without the defendant's knowledge. (See § 12022, subd. (a)(1); *People v. Paul* (1998) 18 Cal.4th 698, 706; *People v. Bland, supra,* 10 Cal.4th at p. 998, fn. 3; *People v. Overten* (1994) 28 Cal.App.4th 1497, 1501-1503.) We express no opinion whether vicarious arming satisfies the arming element of Health and Safety Code section 11370.1, subdivision (a) or disqualifies an inmate from resentencing under section 1170.126, subdivision (e)(2).

"In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction. [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) "In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.) We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.) "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]"'" (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich v. Superior Court, supra,* 21 Cal.4th at p. 276.)

The People contend the language at issue in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) — "During the commission of the current offense, the defendant … *was armed with a firearm*" (italics added) — "is clear on its face and

11.

has no ambiguity." It can be argued, however, that the words are susceptible of two reasonable interpretations: the broad definition espoused by the People (the defendant had the firearm available for immediate offensive or defensive use) and the narrower one endorsed by Martinez (the defendant carried the firearm on his or her person). "The word '[armed]' conveys no self-evident meaning; its import must be gathered from the overall context in which it appears. [Citation.]" (*People v. Woodhead, supra,* 43 Cal.3d at p. 1008.) When "the words themselves provide no definitive answer, we … look to extrinsic sources." (*Ibid.*)

Martinez says that because our aim is to interpret the *voters'* intent, we must give the language "its ordinary meaning *as understood by the electorate,*" i.e., "the average voter, unschooled in the patois of criminal law .…" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901, 902, italics added.) Based on his view of "common lay person understanding," which he supports with various dictionary definitions, Martinez says the electorate understood being "armed with a firearm" to occur where the defendant was carrying a firearm on his or her person while in the perpetration of a crime.

For the most part, however, the dictionary definitions are not so limited.[12] For instance, the first definition of "armed" given by Webster's Third New International Dictionary (1986) at page 119 is "furnished with weapons of offense or defense." The American Heritage Dictionary (2d college ed. 1985) at page 128 defines "armed" as "[e]quipped with weapons." As commonly understood, the state of being furnished or equipped with weapons is broader than carrying a weapon on one's person.

Moreover, Martinez's argument ignores the fact it has long been settled that "[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d

---

[12] This is true even with respect to the dictionaries consulted by Martinez.

321, 329). "This principle applies to legislation enacted by initiative. [Citation.]" (*People v. Weidert*, *supra*, at p. 844.) Indeed, where, as here, "the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the courts."' [Citations.] This principle [likewise] applies to legislation adopted through the initiative process. [Citation.]" (*Id*. at pp. 845-846.)

In enacting Proposition 36, the voters are thus deemed to have been aware of the longstanding statutory and judicially construed definitions of "armed with a firearm." Yet they failed to expressly limit the term when amending sections 667, subdivision (e) and 1170.12, subdivision (c) and enacting section 1170.126. This strongly suggests they intended to disqualify from resentencing those inmates who had a firearm available for immediate offensive or defensive use, and not merely those who carried a firearm on their person. (See *Robert S. v. Superior Court* (1992) 9 Cal.App.4th 1417, 1421-1422.)

A conclusion "armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which the defendant had the firearm available for immediate offensive or defensive use, is supported by an examination of the statutory scheme as a whole. The purpose of the three strikes law has been variously stated as being "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses'" (*In re Young* (2004) 32 Cal.4th 900, 909) and "to promote the state's compelling interest in the protection of public safety and in punishing recidivism" (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070). Although the Act "diluted" the three strikes law somewhat (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 167), "[e]nhancing public safety was a key purpose of the Act" (*id*. at p. 175). Moreover, the various arming provisions were enacted "to deter those engaged in felonies from creating a risk of death or injury by

13.

having a firearm at the scene of the crime. [Citation.]" (*People v. Bland, supra,* 10 Cal.4th at p. 1001 [discussing § 12022]; see also *In re Ogea* (2004) 121 Cal.App.4th 974, 984 [Health & Saf. Code, § 11370.1 was intended to protect public and law enforcement officers from threat posed by armed controlled substance abusers].)

That such a construction of the term comports with voters' intent is supported by the ballot materials related to Proposition 36. The "OFFICIAL TITLE AND SUMMARY" stated in part that the initiative "[c]ontinues to impose life sentence penalty if third strike conviction was for certain nonserious, non-violent sex or drug offenses *or involved firearm possession.*" (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) official title and summary, p. 48, italics added.) In summarizing then-existing law, the legislative analysis of Proposition 36 listed, as examples of violent felonies, murder, robbery, and rape; as felonies that were serious but not violent, assault with intent to commit robbery; and as felonies not classified as violent or serious, grand theft (not involving a firearm) and possession of a controlled substance. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 48.) In summarizing how the initiative measure would shorten sentences for some third strikers, the Legislative Analyst explained there would be some exceptions to the shorter sentence: "Specifically, the measure requires that if the offender has committed certain new or prior offenses, including some drug-, sex-, *and gun-related felonies*, he or she would still be subject to a life sentence under the three strikes law." (*Id.* at p. 49, italics added.) The legislative analysis further described how certain current third strikers would be resentenced, but explained that Proposition 36 "limits eligibility for resentencing to third strikers whose current offense is nonserious, non-violent and who have not committed specified current and prior offenses, such as certain drug-, sex-, *and gun-related felonies*." (Voter Information Guide, Gen. Elec., *supra,* at p. 50, italics added.)

In their "ARGUMENT IN FAVOR OF PROPOSITION 36," the measure's proponents spoke in terms of making the punishment fit the crime, saving California

14.

money, and making room in prison for dangerous felons. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) In their "REBUTTAL TO ARGUMENT AGAINST PROPOSITION 36," the proponents stated, in part: "Prop. 36 requires that murderers, rapists, child molesters, *and other dangerous criminals* serve their full sentences. [¶] … [¶] Today, dangerous criminals are being released early from prison because jails are overcrowded with *nonviolent offenders who pose no risk to the public*. Prop. 36 prevents dangerous criminals from being released early. *People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences*." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, original italics omitted, italics added.)

Section 1 of the proposed law found and declared:

"The People enact the Three Strikes Reform Act of 2012 to restore the original intent of California's Three Strikes law — imposing life sentences for *dangerous criminals* like rapists, murderers, and child molesters.

"This act will:

"(1) Require that murderers, rapists, and child molesters serve their full sentences — they will receive life sentences, even if they are convicted of a new minor third strike crime.

"(2) Restore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime.

"(3) Maintain that repeat offenders convicted of *non-violent, non-serious crimes like shoplifting and simple drug possession* will receive twice the normal sentence instead of a life sentence.

"(4) Save hundreds of millions of taxpayer dollars every year for at least 10 years. The state will no longer pay for housing or long-term health care for elderly, *low-risk, non-violent inmates* serving life sentences for *minor crimes*.

"(5) Prevent the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded

15.

with *low-risk, non-violent inmates* serving life sentences for *petty crimes*." (Voter Information Guide, Gen. Elec., *supra*, text of proposed law, § 1, p. 105, italics added.)

The foregoing materials expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of *simple* drug possession) who posed little or no risk to the public and did not deserve life sentences. We do not view the electorate as deeming someone with a firearm available for immediate use to be nondangerous or to pose little risk to the public.

Martinez observes that the Act refers to specific statutory definitions in some places (e.g., §§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv)), but not in the context of the "arming" definition. He argues this implies the electorate intended the common, lay definition for the term. We disagree. There are multiple statutes in this state's codes that refer to arming. (E.g., §§ 1203.06, subd. (a)(2), 12022; Health & Saf. Code, § 11370.1, subd. (a).) Some expressly define the term (e.g., § 1203.06, subd. (b)(3); Health & Saf. Code, § 11370.1, subd. (a), 2d par.), while others rely on judicial construction (e.g., § 12022; *People v. Bland, supra,* 10 Cal.4th at p. 997). By not specifically including any, the electorate excluded none. (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [under canon of construction *expressio unius est exclusio alterius*, expression of some things in statute necessarily means exclusion of other things not expressed].)

We conclude the trial court erred, as a matter of law, in finding Martinez qualified for resentencing under the Act. The People are entitled to the relief they seek.

### DISPOSITION

The "**PETITION FOR WRIT OF PROHIBITION AND/OR MANDATE**" is granted. Let a writ of mandate issue directing the Superior Court of Tulare County to vacate the order filed in action No. VCF035601-94 on March 21, 2013, finding real party in interest qualified for resentencing under Proposition 36, and to enter a new and

16.

different order denying real party in interest's "**PETITION FOR RECALL OF SENTENCE [P.C. § 1170.126]**."

The order filed on April 9, 2013, staying the proceedings in Tulare County Superior Court case No. VCF035601-94 shall remain in effect only until this opinion is final in all courts in this state or the Supreme Court grants a hearing herein, whichever shall first occur.  Thereafter said stay order is vacated and said stay is dissolved.

_____
DETJEN, J.

WE CONCUR:

_____
LEVY, Acting P.J.

_____
LAPORTE, J.*

---

\*      Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.