Filed 8/25/15  P. v. Grewell CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064736 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCE328629, SCD247683) |
| WILLIAM HENRY GREWELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

John M. Thompson, Judge.  Affirmed.

Loleena Ansari, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Raquel M.

Gonzalez and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and

Respondent.

In an unpublished opinion, we rejected William Henry Grewell's arguments regarding calculation of his custody credits and affirmed the judgment. In a petition for rehearing, Grewell asserted a new issue under Proposition 47 (the Act), passed by California voters on November 4, 2014, effective November 5, 2014. The Act requires "misdemeanors instead of felonies for nonserious, nonviolent crimes . . . unless the defendant has prior convictions for specified violent or serious crimes." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, p. 70.) It also added section 1170.18 to the Penal Code, which allows a person who is "currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section" to petition the trial court for a recall of sentence. (Undesignated statutory references are to the Penal Code.)

We denied the petition for rehearing without prejudice to Grewell's petitioning for relief from the superior court in the first instance. (*People v. Grewell* (Nov. 14, 2014, D064736) [nonpub. opn.], as modified on denial of rehg. Dec. 12, 2014.) The Supreme Court granted Grewell's petition for review and transferred the matter back to this court with directions to vacate our opinion and consider the following issue: Does [the Act] apply retroactively to a defendant who was sentenced before the proposition's effective date, but whose judgment was not yet final until after that date? We requested supplemental briefing on the issue, which the parties provided.

We repeat our prior conclusion regarding the calculation of Grewell's custody credits. We reject Grewell's arguments regarding the Act and conclude his remedy is to petition for relief from the superior court in the first instance.

2

DISCUSSION

I. *Calculation of Custody Credits*

A. Introduction

Grewell was in custody in SCE328629 (case one) when a complaint was filed against him in SCD247683 (case two). He pleaded guilty in both cases. In each case, the trial court sentenced him to the upper term of three years, with the sentence in case two running concurrent to the sentence in case one. The court ordered a split sentence, with two years in county jail and one year in mandatory supervision. At the time of sentencing, the court awarded presentence custody credits for both cases, which is the subject of this appeal.

Specifically, in case one, the trial court awarded Grewell 95 days of actual custody, calculated from the date of his arrest and booking (March 23, 2013) to the date of his sentencing (June 25, 2013), and 94 days of conduct credit for a total of 189 days. (All date references are to 2013.) In case two, the trial court calculated Grewell's presentence credits to be 55 days of actual custody and 54 days of conduct credit, for a total of 109 days. The court calculated his actual custody from the date of his arraignment (May 2) to the date of his sentencing (June 25), for a total of 55 days.

Grewell contends the trial court incorrectly calculated his presentence custody credits in case two. He asserts the trial court should have calculated his presentence custody credits in case two starting from the date the complaint in case two was filed (April 25), which would have given him seven additional days of actual custody credits and seven additional days of Penal Code section 4019 conduct credits. He

3

argues that because he was in presentence custody in case one when this new complaint in case two was filed against him, the use of his arraignment date as the start of the presentence custody credit calculation is in direct conflict with the plain meaning and legislative intent of section 2900.5.

We requested further briefing on what impact, if any, subdivision (d) of section 2900.5 has on deciding the issue raised on appeal. Both parties provided a response.

B. Analysis

This case presents a question of statutory interpretation, a question of law we review de novo. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.) We look to the words of the statute itself, which is normally the best indicator of the lawmakers' intent. (*People v. Goodloe* (1995) 37 Cal.App.4th 485, 490-491.) If the statutory words are clear and unambiguous, we may not modify them to accomplish a purpose not apparent on the face of the statute or from its legislative history. (*Ibid.*)

A defendant is entitled to credit for time "in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility . . . or similar residential institution." (§ 2900.5, subd. (a).) Subdivision (b) of section 2900.5 provides that presentence custody credits shall be given "only where the custody to be credited *is attributable to* proceedings related to the same conduct for which the defendant has been convicted." (Italics added.) A sentencing court has a duty "to determine the date or dates of any *admission to*, and release from, custody prior to sentencing." (§ 2900.5, subd. (d), italics added.)

4

Where, as here, a defendant is serving concurrent sentences, imposed at the same time for unrelated crimes, the defendant is entitled to presentence custody credits on each sentence, provided he is not in postsentence custody for another crime. (*People v. Kunath* (2012) 203 Cal.App.4th 906, 908.) Because Grewell was not serving postsentence custody for another crime, the court correctly awarded him presentence custody credit in both cases. As Grewell notes, problems arise in applying the language of subdivision (b) of section 2900.5 in situations where the calculation of presentence custody credits stems from multiple cases because of the need to determine which custody is attributable to each case. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1180.) As our high court has recognized, "there is no simple or universal formula to solve all presentence credit issues" but the "aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*In re Joyner* (1989) 48 Cal.3d 487, 495.)

It is undisputed that the trial court correctly determined Grewell's presentence custody credits in case one, calculated from the date he was booked into custody to the date of his sentencing. (*People v. Ravaux*, *supra*, 142 Cal.App.4th at p. 920.) He asserts the trial court did not award *all* of the presentence custody credit he was entitled to in case number two because it began the calculation on the date of his arraignment in case two rather than the date the complaint in case two was filed.

Specifically, he claims the language of subdivision (b) of section 2900.5 "does not indicate a guideline for determining when custody is attributable to proceedings in

5

the relevant case; it simply states that only where custody is attributable to the proceedings, the defendant shall be given credit." Accordingly, he asserts multiple options existed for determining what date represented the initiation of his custody as attributable to case two, namely (1) the date the complaint was filed (April 25), (2) the date of booking and arraignment (May 2), and (3) the date the order to produce was issued (May 21). He argues that all three of these dates represent proceedings where his custody was "attributable" to the present proceedings related to his conviction in case two on June 25. Therefore, because subdivision (b) of section 2900.5 does not indicate when his custody on case two began, he is entitled to credit for his time in custody for all of these proceedings in case two and as a matter of logic, the calculation should begin at the first date, April 25, when the complaint in case two was filed.

We disagree with this argument as it ignores the language of subdivision (d) of section 2900.5, which imparts on the sentencing court a duty to determine when a defendant is admitted into custody and released from custody. Thus, this subdivision instructs when a defendant's custody becomes attributable to the proceedings for which the defendant has been convicted of within the meaning of section 2900.5, subdivision (b). Here, the only relevant date for determining the initiation of custody attributable to case two is May 2, the date Grewell was admitted into custody on case two. This result is faithful to the language of section 2900.5, produces fair and reasonable results and can be readily understood and applied by trial courts. (*In re Joyner*, *supra*, 48 Cal.3d at p. 495.) Accordingly, the trial court correctly calculated Grewell's actual

6

custody in case two from the date of his arraignment (May 2) to the date of his sentencing (June 25), for a total of 55 days.

## II. *The Act*

The Act reduced various felony or wobbler offenses, including Grewell's petty theft with three priors, to misdemeanors. (See e.g., § 666.) Thus, had Grewell been sentenced after the effective date of the Act, he would have been entitled to a misdemeanor rather than a felony sentence. Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), Grewell argues the provisions of the Act apply retroactively to his case and reduce his felony conviction for petty theft with priors to a misdemeanor because he does not have a disqualifying prior conviction. In this context, "retroactive" means the Act applies to a limited and narrow class of defendants who were sentenced before the effective date of the Act, but whose convictions are not yet final. The People did not argue in their supplemental briefing that the Act does not apply to Grewell's conviction or that Grewell is not eligible for resentencing because he has a disqualifying prior conviction. Rather, the People contend *Estrada* does not apply because section 1170.18 is the functional equivalent of a saving clause, the Act is not "self-executing" and Grewell's only remedy is to petition for recall of sentence in the trial court after his conviction becomes final.

This matter presents question of statutory interpretation. " 'In interpreting a voter initiative . . . we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] The statutory language must also be construed in the

7

context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent].  [Citation.]  When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]'  [Citation.]  In other words, 'our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure.'"  (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)  Finally, "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation].  'This principle applies to legislation enacted by initiative.  [Citation.]'  [Citation.]"  (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1015.)

The Act became effective on November 5, 2014, the day after its enactment. (Cal. Const., art. 2, § 10(a) ["An initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise."].)  Accordingly, the ameliorative amendments apply to all crimes committed on or after November 5, 2014.  The question presented is the extent to which the Act applies to crimes committed prior to its effective date; such as where, as here, a defendant has been convicted and sentenced, but the defendant's conviction is not yet final.

"No part of [the Penal Code] is retroactive, unless expressly so declared."  (§ 3.) However, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final unless there is some form of "saving clause" from which

8

a court can find an intent of prospective application. (*Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari have expired. (*People v. Kemp* (1974) 10 Cal.3d 611, 614.) The Legislature may "clearly" signal its intent by including an express saving clause making the amendment prospective, "or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793, fn. omitted.) "[W]hat is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1049, italics omitted.)

The Act does not expressly declare that its provisions are retroactive; thus, we presume that under section 3, the voters intended the Act to operate prospectively. We believe the plain language of section 1170.18 supports this conclusion. Those defendants "*currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense* may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ." (§ 1170.18, subd. (a), italics added.) If the petitioning defendant meets the eligibility requirements of the Act, the trial court must grant the petition "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.* at subds. (a), (b).)

9

Grewell is "[a] person currently serving a sentence for a conviction" as defined in subdivision (a) of section 1170.18 and subdivision (b) of the statute allows him to petition the trial court for relief regardless of the finality of his conviction. Even assuming the phrase "[a] person currently serving a sentence for a conviction" is ambiguous on the question whether it refers to a person whose conviction is not yet final, we must effectuate the intent of the voters who passed the initiative measure. (*People v. Briceno*, *supra*, 34 Cal.4th at p. 459.)

The "Purpose and Intent" state that the Act requires "misdemeanors instead of felonies for nonserious, nonviolent crimes . . . unless the defendant has prior convictions for specified violent or serious crimes." (Historical and Statutory Notes, 32A pt. 3 West's Ann. Gov. Code (2015 supp.) foll. § 7599, p. 155, § 3(3).) It also authorizes "*consideration* of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors" and "*[r]equire[s]* a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (*Id.* at § 3(4), (5), italics added.)

Significantly, the analyses and arguments contained in the official ballot pamphlet explained to voters "the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) "Resentencing of Previously Convicted Offenders," p. 36.) Opponents of the measure argued the Act would "require the release of thousands of dangerous

10

inmates." (*Id.* "Argument Against Proposition 47" at p. 39, italics deleted.) In the official rebuttal argument of the Act, proponents responded that the Act "does not require automatic release of anyone." (*Id.* "Rebuttal to Argument Against Proposition 47" at p. 39, italics deleted.)

In other words, proponents of the Act assured the public that those persons who were already convicted and incarcerated, regardless of the finality of their convictions, would not be granted automatic misdemeanor resentencing and potentially released from incarceration, but could only be granted that resentencing if a judge determined the individual did not pose an unreasonable risk to public safety. In effect, Grewell argues the Act is self-executing, "automatically" reduced his conviction to a misdemeanor and the only thing left is to remand the matter to the trial court for resentencing. We believe this result is directly contrary to the intent of the voters; i.e., that persons currently serving a sentence for a conviction petition the trial court for resentencing.

When the trial court receives a petition for resentencing, it must determine whether a defendant poses an unreasonable risk of danger to public safety. (§ 1170.18, subd. (b).) In exercising its discretion, the court may consider the petitioner's "disciplinary record and record of rehabilitation while incarcerated" and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.* at subd. (b)(2), (3).) Several years could elapse between sentencing and finality where defendants who might otherwise qualify for resentencing may have shown themselves

11

to pose an "unreasonable risk of danger to public safety" as defined by the Act based on misconduct committed during postsentencing incarceration. (*Id.* at subd. (c).) Under Grewell's interpretation of the Act, such a defendant would still be entitled to automatic resentencing without filing a petition; a result directly contrary to assurances made to the voters.

Finally, we reject Grewell's argument that subdivision (m) of section 1170.18 requires a different outcome. This subdivision states: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant." Subdivision (m) protects defendants who have already been sentenced from being forced to choose between filing a petition for recall of sentence and pursuing other remedies to which they might be entitled, such as filing an appeal or a petition for habeas corpus. (See *People v. Yearwood* (2013) 213 Cal.App.4th 161, 178 [finding that section 1170.126, subdivision (k) of the Three Strikes Reform Act of 2012, which contains the exact language of subdivision (m), has no impact in determining if sections 667 and 1170.12 operate retroactively].) In other words, subdivision (m) is not relevant to the issue at hand. Even if subdivision (m) could be considered relevant, interpreting this subdivision as requiring automatic resentencing for an eligible defendant is contrary to the intent of the voters.

Accordingly, we add our voice to those cases that have decided this issue and decline to reduce Grewell's felony conviction for petty theft with priors to a misdemeanor. (*People v. Delapena* (July 30, 2015, H041363) ___ Cal.App.4th ___ [2015 Cal.App. Lexis 663]; *People v. DeHoyos* (2015) 238 Cal.App.4th 363, 366,

12

petition for review filed August 3, 2015; *People v. Shabazz* (2015) 237 Cal.App.4th 303, 314; *People v. Noyan* (2014) 232 Cal.App.4th 657, 672.)

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.