Filed 10/19/15  P. v. Singson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RONALD WILLIAM SINGSON,<br><br>  Defendant and Appellant. | 2d Crim. No. B259573<br>(Super. Ct. No. SB222551)<br>(Santa Barbara County) |

Ronald William Singson appeals an order denying his petition for resentencing under Penal Code section 1170.126 of the Three Strikes Reform Act of 2012.[1]  (§§ 667, 1170.12, 1170.126; Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012), "the Act.")  We deferred resolution of Singson's petition for writ of mandate pending completion of briefing of this appeal and deny the petition by separate order. (*Singson v. Superior Court*, No. B262897.)  We conclude that the trial court did not abuse its discretion by determining that Singson would pose an unreasonable risk of danger to public safety, and affirm.

### FACTUAL AND PROCEDURAL HISTORY

Singson is serving an indeterminate term of 51 years to life under the three strikes law for conviction of vehicle theft (Veh. Code, § 10851, subd. (a)); two counts of

---

[1] All statutory references are to the Penal Code unless otherwise stated.

forgery (§ 470); grand theft (§ 487); and perjury (§ 118). We affirmed the judgment on appeal. (*People v. Singson* (July 28, 1999, B122540) [nonpub. opn.].) Singson's criminal history includes four prior strike convictions for first degree burglary. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 459, 460.)

Singson took a car from C.H., who he was dating, and sold it to a friend. Our opinion affirming the conviction described the offense as follows: "Appellant told [C.H.] he had been involved in 'some problems' with the car in Los Angeles and he had gotten rid of it for her protection. He threatened [C.H.] with physical harm. They stayed together at different motels over the next few days, and appellant assaulted her sexually at one point." (*People v. Singson*, *supra*, B122540.) Singson obtained a "junk receipt" and title for the car. (*Ibid.*) "Two portions of the DMV forms necessary to effectuate the transfer of title to appellant contained signatures in the name of '[L.H.],' who was [C.H.]'s mother. [L.H.] had not signed the forms and had not authorized the sale of the car." (*Ibid.*) Afterward, Singson "left three or four messages on [L.H.]'s answering machine during the month of July, in which he threatened to harm her and her daughter if they pressed charges against him." (*Ibid.*)

Singson had a disciplinary record while incarcerated in the early 1990's. He was released in September 1995 and returned to prison two months later for violating parole. Singson was released on August 1996 and returned to prison one month later for violating parole. He was released in May 1997, absconded on parole, and within two weeks committed the commitment offense.

In January 2013, Singson filed a petition for resentencing as a second-strike offender under the Act. The prosecutor opposed the petition. The court held an evidentiary hearing that spanned several months. Eleven witnesses testified, including experts, percipient witnesses, Singson, character witnesses, and experts for both sides.

C.H. testified about the theft and sexual assault. She described facts underlying her felony conviction for forging her mother's checks in 1997. She said Singson made her take her mother's checks, threatened her with a butcher knife on the

2

way to her mother's house, and took the money when the checks were cashed. She did not report this because she was afraid. Singson left messages on her mother's answering machine threatening to kill them if they cooperated with police. C.H. said after she testified Singson filed a civil suit against her and her mother. It was dismissed. In 2010, Singson sent a letter from prison to C.H.'s new home address in Oregon offering her $30,000 to recant her testimony. It frightened her that he had her address. She purchased her home through a trust and took other measures to prevent him from finding her. She did not keep the letter. The letter violated a protective order.

Daniel Swanson, a detective for the Simi Valley Police Department, opined that Singson is not fit for resentencing because of a propensity for violence based on his history, his discipline record, and Swanson's interview with Singson, among other things. In 1998, Singson attempted to escape from prison. In 2001, he cut the neck of inmate Mahan.

Singson faced disciplinary charges for attempted murder. During the proceedings, he admitted battery causing serious bodily harm. In 2003, he flooded his cell and interfered with an officer's performance of his duty. In 2005, Singson hit another inmate in the face. In 2007, he fought with an inmate. In 2010 and 2011, he fought with inmates. Swanson described other disciplinary incidents. Singson was also the victim of documented assaults, including an incident in 2006 in which an inmate choked him with a cord, and another in 2012 in which an inmate stabbed him. Swanson also opined that Singson is a neo-Nazi, and testified that his three lightning bolt tattoos represent acts of violence committed on behalf of a neo-Nazi prison gang.

Singson submitted evidence that in the past several years he completed some college courses, participated in narcotics anonymous, attended Jewish religious services and was approved for a kosher meal program. He worked as a plumber in prison, was entrusted with power tools and sharp objects, and did not misuse that trust. There was no evidence he used drugs in prison.

3

Singson submitted a number of "laudatory chronos," or favorable statements from correctional officers, that were dated December 2012 and January 2013, the month preceding his petition. Two officers told Swanson they did not sign the documents. Four officers told an institutional gang investigator, Davis, the same thing. Eight other laudatory chronos were legitimate. One laudatory chrono was signed by an inmate, rather than an officer. Singson waived a hearsay objection to statements officers made directly to Swanson, but objected to the information Swanson obtained indirectly through Davis. The trial court overruled the objection.

Richard Subia, a public safety consultant, opined that Singson is appropriate for resentencing because he is unlikely to pose an unreasaonble risk of danger to public safety if released. He believed much of Singson's disciplinary record was based on mutual combat or Singson's victimization by other inmates. Subia testified that correctional officers have a motive to deny signing laudatory chronos because the Department of Corrections instructs them not to cooperate in Proposition 36 petitions. He acknowledged that Singson's classification score was high, ranging between 161 and 207 throughout his incarceration, while the minimum score for a person with a life sentence is between 52 and 60. He said that some factors other than violence affect the score.

Singson asked to be released into a treatment program. He had been accepted at two sober living facilities. His friends testified that they would offer him support if he were released. The grandmother of his teenage daughter testified about his loving letters and phone calls to his daughter. She believed his daughter would benefit from more contact with him.

In July 2014, the trial court denied the petition after it concluded that resentencing Singson would pose an unreasonable risk of danger to public safety. The trial court noted that the commitment offenses were not violent, but violence and threats surrounded them, and Singson continually victimized C.H. and her mother with threats after committing the offenses. The court noted Singson's significant pre-incarceration

4

criminal history, including four prior strikes for residential burglary, and that he was an absconded parolee when he committed the commitment offense. The court noted his consistently high classification score while in prison and his extensive disciplinary record of violence including incidents in 2001, 2005, 2007, 2010, and 2011. The court discounted an incident in 1999 involving an inmate who fought with him because he thought Singson was a sex offender and "gave little weight to" evidence of white supremacist tattoos and gang affiliation. It stated there was no question that Singson has support if he is released. The judge found C.H. to be "an extremely credible witness." The judge found that "forgery was involved with some but not all of the laudatory chronos." The judge credited Singson's expert, Subia, except to the extent Subia relied on the forged chronos.

DISCUSSION

*No Abuse of Discretion Under Proposition 36*

Under the three strikes law as it existed before Proposition 36, a defendant convicted of two prior serious or violent felonies was subject to a minimum sentence of 25 years to life upon conviction of any third felony. The Act reduces punishment for certain offenders whose current convictions are not serious or violent. Prisoners who are currently serving an indeterminate sentence for a third felony conviction, which was not a serious or violent felony, may seek resentencing as a second strike offender to a determinate term. (§ 1170.126.)

An offender who meets the statutory criteria "shall" be resentenced "unless" the court, in its discretion, determines that resentencing would pose an "unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) We review for abuse of discretion. (*People v. Flores* (2014) 227 Cal.App.4th 1070, 1075.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

5

The trial court exercised its discretion not to resentence Singson in the manner prescribed by section 1170.126, considering all relevant evidence and criteria. In exercising its discretion, the trial court may consider "[t]he petitioner's criminal conviction history." "disciplinary record," and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(1)-(3).) The trial court expressly considered each factor. Substantial evidence in Singson's criminal record, record of discipline, and the testimony of the witnesses supports its findings.

Singson contends the trial court erred when it considered Davis's reports to Swanson that four officers said they did not sign the laudatory chronos. There was no independent testimony from those officers and they did not speak directly to Swanson. But even if we assume hearsay rules apply in a resentencing hearing, there was no error. The prosecution agreed in closing arguments that these statements would not be considered for the truth of the matter asserted. And there was other substantial evidence to sustain its finding that Singson forged laudatory chronos. Two officers told Swanson directly that they did not sign the documents. One was "adamant" and "angry" and pointed out that his name was misspelled. Singson stipulated that the court could rely on statements made directly to Swanson. We are confident the outcome would not have been different without the evidence of the four additional forged chronos.

Singson contends C.H. was not credible because she was young, shares a criminal history with him, and was wrong when she testified he had a swastika tattoo on his chest. The jury in the underlying case and the resentencing judge credited her testimony. It is not our role to reweigh it, even if we were so inclined.

The trial court acted within its discretion when it discredited many of Singson's innocent explanations for his disciplinary record. Singson offered evidence that a document in his file incorrectly contained an "R-suffix," which identifies an inmate as a sex offender. It was based on a juvenile adjudication for a misdemeanor sex offense. It was corrected in 2000, although not eliminated from his file. He contends

6

that his violent encounters were defensive and in response to being victimized by inmates because of the R-suffix and because he was Jewish.  He testified he cut Mahan's throat because Mahan was trying to rape him, and had raped him the night before in his cell.  He also attributed the rape to his R-suffix and because he was Jewish.  Singson had an opportunity at the administrative hearings on the disciplinary proceedings, and again at the resentencing hearing, to offer any explanation or defenses he could.  He has given multiple versions of these incidents and his testimony was not credited.  As the court told the prosecutor during closing argument, "I'm aware of the difference in the versions.  And I do recall them."  It is not our role to reweigh the evidence or reevaluate the credibility of witnesses.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

The People contend they have no burden in the resentencing proceedings. We do not reach the issue because the trial court held the prosecution to the burden of proving dangerousness by a preponderance of the evidence, and found the burden was met.

*Proposition 47's Definition of Dangerousness Does Not Apply*

Recently enacted Proposition 47 ("the Safe Neighborhoods and Schools Act," § 1170.18, subd. (c)) does not modify the definition of "unreasonable risk of danger to public safety" in section 1170.126, subdivision (f).[2]  Proposition 47 renders misdemeanors as certain offenses that previously were felonies or "wobblers."  It creates a new resentencing provision by which qualified people may request resentencing in accordance with its provisions.  (§ 1170.18, subd. (c).)  In the text of Proposition 47 is the provision:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new [super strike] violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of

---

[2] The question whether the definition of "unreasonable risk of danger to public safety" in Proposition 47 applies to resentencing under the Proposition 36 is pending before the California Supreme Court in *People v. Chaney* (May 20, 2015, S223676) and *People v. Valencia* (Mar. 24, 2015, S223825).

subdivision (e) of Section 667." (*Ibid.*)[3] The plain language of Proposition 47 applies this definition "throughout [the Penal] Code," but the apparent purpose of a statute will not be sacrificed to a literal construction. (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) In interpreting Proposition 47, we apply the same principles that govern statutory interpretation. (*People v. Superior Court (Cervantes)* (2014) 225 Cal.App.4th 1007, 1014.) The intent of the voters governs. (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

Nothing in the analyses and arguments in the official ballot pamphlet for Proposition 47, public policy, the social context of the initiative, or the statutory scheme suggests that the voters intended to modify the provisions of Proposition 36. Proposition 47 reflects a policy to require courts to resentence all qualified misdemeanants, unless they are likely to commit a super-strike. In contrast, Proposition 36 allows trial courts broad discretion to determine whether resentencing eligible felons "would pose an unreasonable risk of danger to public safety," consistent with its purpose to reform the three strikes law while keeping intact a core commitment to protecting the public from serious and violent felons such as Singson.

Reading Propositions 36 and 47 together, in the context of the statutory framework as a whole, we conclude the literal meaning of the phrase, "[a]s used throughout this Code" in section 1170.18, subdivision (c), does not comport with the purpose of either propositions, and applying its provisions to section 1170.126, subdivision (f) would frustrate rather than promote the intent of the electorate.

*No Right to Jury Trial*

Singson did not have a right to a jury trial on his petition for resentencing. Resentencing under section 1170.126, subdivision (f) does not increase or aggravate the

---

[3] Section 667, subdivision (e)(2)(C)(iv) identifies a short list of extremely serious and violent felonies, often referred to as "super strikes." They are sexually violent offenses, certain child molestation offenses, homicide offenses and solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, and any serious or violent felony punishable by life in prison or death. (*Id.*, subparts (I)-(VIII).)

petitioner's sentence. It is akin to a downward sentence modification due to intervening laws. (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1304; *see Dillon v. United States* (2010) 560 U.S. 817, 828-829.)

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

9

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.