Filed 8/25/21  P. v. Moppins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088950 |
| v. | (Super. Ct. No. 16FE002475) |
| FRANK IRVIN MOPPINS, | |
| Defendant and Appellant. | |

Defendant Frank Irvin Moppins participated in an armed robbery when he was 20 years old and while on probation for a first degree burglary conviction.  A jury convicted him on three counts of second degree robbery and one count of attempted second degree robbery and found true allegations that he personally used a firearm. The trial court found true an allegation that defendant was previously convicted of a serious felony and imposed an aggregate sentence of 23 years eight months.

Defendant now contends (1) the trial court abused its discretion in declining to dismiss the firearm use and/or prior serious felony conviction enhancements; (2) Penal

1

Code section 3051, subdivision (h)[1] violates equal protection because it excludes youth offenders sentenced under the three strikes law from youth offender parole eligibility; and (3) we must remand the case so that the trial court may consider mental health diversion under section 1001.36, and if this claim is forfeited, his trial counsel was ineffective in not pursuing mental health diversion.

We conclude (1) the trial court did not abuse its discretion in declining to dismiss the firearm use or prior serious felony conviction enhancements; (2) there is a rational basis for excluding three-strikes youth offenders from youth offender parole eligibility; and (3) defendant's claim regarding mental health diversion is forfeited and he does not establish ineffective assistance of counsel. We will affirm the judgment.

BACKGROUND

Z.H., P.B., D.T. and C.G. went to a park to take pictures of graffiti on a wall behind the park. Two men followed the group. One wore a red hoodie; the other wore a blue hoodie. Both men were armed.

One of the men ordered the group to get on the ground. The man in the red hoodie held a gun to P.B.'s back, searched him and hit him multiple times. That robber also searched Z.H., patting her down twice. He called her "baby" and groped her. C.G. felt the muzzle of a gun at the back of his head when he was on the ground. The other robber hit D.T. in the face with a gun and someone kicked him after he got on the ground. D.T. suffered a fractured orbital socket, a broken nose and a laceration under his eye and needed stitches under his eye and behind his ear. The robbers took P.B., C.G. and D.T's wallets and other property.

Z.H. and D.T. identified Ceariaco Cabrellis as one of the robbers at a field show up and at trial. D.T. said Cabrellis was the person who hit him with the gun and took his

---

[1] Undesignated statutory references are to the Penal Code.

cell phone and wallet. Z.H. identified defendant at a photographic lineup and at trial as the second robber. P.B. identified defendant as the robber in the red hoodie. Defendant admitted participating in the robbery during a police interview.

The jury convicted defendant on three counts of second degree robbery (§ 211 -- counts one, two and three ) and one count of attempted second degree robbery (§§ 664, 211 -- count four). It found true the section 12022.53, subdivision (b) personal use of a firearm allegations in counts one to four. The trial court found true the section 667, subdivision (a) allegation that defendant was previously convicted of first degree burglary. It also found that defendant was on probation on the burglary case at the time of the current offenses and that he violated the conditions of his probation by committing the current offenses; the trial court revoked defendant's probation. It imposed an aggregate sentence of 23 years eight months in prison on the current offenses, plus a consecutive prison term of one year and four months on the violation of probation for the prior strike conviction.

DISCUSSION

I

Defendant contends the trial court abused its discretion in declining to dismiss the section 12022.53, subdivision (b) personal use of a firearm enhancement and/or the section 667, subdivision (a) prior serious felony conviction enhancement.

Section 667, subdivision (a) provides that "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." A serious felony includes first degree burglary, robbery and attempted robbery. (§§ 667, subd. (a)(4), 1192.7, subd. (c)(18), (c)(19), (c)(39).) Moreover, section 12022.53 mandates an additional and consecutive 10-year prison term for any person who personally uses a firearm in the commission of specified felonies, including

3

robbery and attempted robbery. (§ 12022.53, subds. (a)(4), (a)(18), (b).) The trial court had the discretion to dismiss the section 667, subdivision (a) and section 12022.53, subdivision (b) enhancements or the additional punishment for those enhancements in furtherance of justice pursuant to section 1385. (Stats. 2017, ch. 682, § 2; Stats. 2018, ch. 1013, §§ 1-2; §§ 1385, subds. (a), (b)(1), 12022.53, subd. (h).)

In deciding whether to dismiss an enhancement, a trial court should consider the factors listed in California Rules of Court, rules 4.410, 4.421 and 4.423. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117; see *People v. Shaw* (2020) 56 Cal.App.5th 582; *People v. Rocha* (2019) 32 Cal.App.5th 352, 359.) Rule 4.410 lists the general objectives of sentencing which include protecting society, punishing the defendant, encouraging the defendant to lead a law-abiding life in the future, and deterring him or her from future offenses. (Cal. Rules of Court, rule 4.410(a).) Rules 4.421 and 4.423 set forth the circumstances in aggravation and mitigation that relate to the crime and the defendant.

Aggravating factors relating to the crime include that (1) the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness or callousness; (2) the defendant was armed with or used a weapon at the time of the commission of the crime; (3) the victim was particularly vulnerable; and (4) the manner in which the crime was carried out indicates planning, sophistication or professionalism. (Cal. Rules of Court, rule 4.421(a).) Aggravating factors relating to the defendant include that the defendant engaged in violent conduct that indicates a serious danger to society and the defendant was on probation when the crime was committed. (Cal. Rules of Court, rule 4.421(b).) Mitigating factors relating to the defendant include that the defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime. (Cal. Rules of Court, rule 4.423(b).) The trial court may also consider any other factors that reasonably relate to the defendant or the circumstances under which the crime was committed. (Cal. Rules of Court, rules 4.421(c), 4.423(c).)

We review a trial court's exercise of discretion under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374, 376 (*Carmony*).) Applying that standard, "we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.) " 'Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Id.* at pp. 378.)

Defendant argues the trial court gave no weight to his youth, mental health issues, cognitive deficits, and limited criminal record in declining to dismiss one or both of the enhancements. The record does not support his argument.

The trial court acknowledged it had discretion to strike the sections 667, subdivision (a) and 12022.53 enhancements but declined to do so based on its consideration of the aggravating and mitigating factors. It discussed those factors, including that the crime involved four victims, defendant pointed a gun at the victims and gratuitously groped Z.H., defendant was on probation for a prior serious felony conviction when he committed the current serious felony offenses, defendant was young and had no prior prison commitment, he was cognitively impaired, and although defendant was an active participant, Cabrellis was the "dynamic force" in the robberies.

5

The trial court considered a letter from defendant's former psychiatrist which described defendant's various mental health issues, including severe, chronic schizoaffective disorder since he was a young teen.  The trial court also considered the probation officer's report which noted defendant's youth as a mitigating circumstance and listed multiple circumstances in aggravation relating to the crime and defendant.  The trial court imposed a sentence that was less than what the probation officer and prosecutor had recommended, indicating that it believed the sentence was appropriate given the goals for punishment, deterrence, and rehabilitation.

Nothing in the record suggests the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony, supra*, 33 Cal.4th at p. 377.)  Nor has defendant demonstrated that the challenged rulings were based on improper or irrelevant facts.  (*Id.* at p. 378.)  We do not second guess the trial court's weighing of the factors where it did not rely on improper factors.  (*Id.* at pp. 378-379.)

II

Defendant also argues that section 3051, subdivision (h) violates equal protection because it excludes youth offenders sentenced under the three strikes law from receiving a youth offender parole hearing.

The Legislature enacted section 3051 to provide a person serving a sentence for crimes committed as a juvenile the opportunity to obtain release when the person has shown rehabilitation and maturity.  (Stats. 2013, ch. 312, § 1.)  But the statute excludes inmates like defendant who were sentenced under the three strikes law.  (§§ 3051, subds. (a), (b)(1), (h), 667, subds. (b)-(i), 1170.12.)  Defendant argues the exclusion violates equal protection because youth offenders sentenced under the three strikes law are similarly situated to youth offenders who are not sentenced under the three strikes law and there is no rational basis for excluding three-strikes youth offenders from youth offender parole eligibility.

6

Even if we were to assume that youth offenders sentenced under the three strikes law are similarly situated to those not sentenced under the three strikes law for purposes of section 3051 (*People v. Valencia* (2017) 3 Cal.5th 347, 376), defendant's contention nevertheless fails because there is a rational basis for excluding three-strikes youth offenders from youth offender parole eligibility.

Under the rational relationship test, a statutory classification " ' "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' " ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481-482, italics omitted.) "The underlying rationale for a statutory classification need not have been ' "ever actually articulated' ' by lawmakers, and it does not need to ' "be empirically substantiated.' " [Citation.] Nor does the logic behind a potential justification need to be persuasive or sensible -- rather than simply rational." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.) A statutory classification is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. (*Ibid.*; *People v. Turnage* (2012) 55 Cal.4th 62, 75 (*Turnage*) [rejecting equal protection claim where the defendant did not negate every possible, plausible grounds for the classification].) The rational relationship test thus "sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny." (*Chatman,* at p. 289.)

Courts have long recognized that a state has a legitimate interest in imposing harsher punishment on recidivists and in enhancing public safety. (*Texas v. McCullough* (1986) 475 U.S. 134, 144 [89 L.Ed.2d 104]; *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 (*Kilborn*) [stating that a system of imposing greater punishment on all persons who commit a felony after having committed one or more serious or violent felonies in the past is rationally related to the legitimate goal of discouraging recidivism]; see *People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1016 [describing

7

the purposes of the three strikes law]; *People v. Cooper* (1996) 43 Cal.App.4th 815, 829 ["Violent and serious felony offenses differ from other offenses in many ways, including . . . the potential for danger to the victim and society in general. Such differences warrant different treatment."].)

"[T]he Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.) " '[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' " (*Ibid.* [also stating that any plausible reason for the legislative distinction need not exist in every scenario in which the statutes might apply]; see also *Turnage, supra,* 55 Cal.4th at p. 74 [stating that the Legislature defines punishment, and equal protection analysis does not entitle the judiciary to second guess the wisdom, fairness or logic of the law].) Because the exclusion challenged here is rationally related to the goals of punishing and deterring recidivism and protecting the public, defendant's equal protection claim lacks merit. (*People v. Wilkes* (2020) 46 Cal.App.5th 1159, 1165-1167 (*Wilkes*); see *Kilborn, supra,* 41 Cal.App.4th at p. 1332; *People v. McCain* (1995) 36 Cal.App.4th 817, 820.)

Defendant asserts that the exclusion of three-strikes youth offenders in section 3051 contravenes *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*), *Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407] and *People v. Caballero* (2012) 55 Cal.4th 262. Those cases held that sentences of life without the possibility of parole (LWOP) or the equivalent of LWOP for a juvenile offender who did not commit homicide violate the Eighth Amendment's prohibition against cruel and unusual punishment. (*Graham,* at pp. 74-75; *Miller,* at p. 465; *Caballero,* at pp. 265, 268.) The United States Supreme Court said the state must give such youth offenders

8

"some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham,* at pp. 74-75.) *People v. Contreras* (2018) 4 Cal.5th 349, 356, another case defendant cites, held that the 50-years-to-life and 58-years-to-life sentences imposed for sexual offenses the defendants committed as 16-year-olds violated the Eighth Amendment under the reasoning of *Graham.*

In contrast with the circumstances in the cases defendant cites, defendant was not sentenced to LWOP. Nor does he contend that he received a de facto LWOP sentence. He fails to explain how the aggregate determinate prison term of 23 years eight months imposed for his current offenses contravenes the cited cases or fails to give him "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham, supra,* 560 U.S. at p. 75.)

Defendant also cites *People v. Edwards* (2019) 34 Cal.App.5th 183, but that case is distinguishable. (*Wilkes, supra,* 46 Cal.App.5th at p. 1166-1167.) The defendants in *Edwards* received 129-years-to-life and 95-years-to-life sentences under the one strike law. (*Edwards,* at pp. 186, 192-193.) *Edwards* did not consider whether there is a rational basis for greater punishment of a three-strikes defendant.

III

Defendant further contends we must remand the case so that the trial court may consider mental health diversion under section 1001.36.

Enacted on June 27, 2018, section 1001.36 gives a trial court discretion to grant pretrial diversion for defendants with certain mental health disorders. (*People v. Frahs* (2020) 9 Cal.5th 618, 624, 626 (*Frahs*).) " '[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) The statute became effective immediately. (*Frahs, supra,* 9 Cal.5th at p. 626.)

At the time of defendant's trial, section 1001.36 provided that pretrial diversion may be granted if the trial court was satisfied that (1) the defendant suffered from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders which (2) played a significant role in the commission of the charged offense and (3) in the opinion of a qualified mental health expert, the defendant's symptoms motivating the criminal behavior would respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial, except in a circumstance not applicable here; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the trial court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Stats. 2018, ch. 34, § 24 [former section 1001.36, subdivision (b).)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. [Citations.] The maximum period of diversion is two years. [Citation.] If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. [Citation.] 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' " (*Frahs, supra*, 9 Cal.5th at p. 627.)

Defendant contends section 1001.36 should be applied retroactively to his case. But retroactivity does not apply here because section 1001.36 was in effect when defendant's trial started. Defendant nevertheless seeks remand to allow him to pursue a section 1001.36 pretrial diversion program even though he could have, but did not,

10

request diversion before his case was adjudicated.  Under these circumstances, his contention is forfeited.  (See *Carmony, supra,* 33 Cal.4th at pp. 375-376 [defendant forfeited his right to raise the issue on appeal because he failed to invite the trial court to exercise its discretion].)

Anticipating forfeiture, defendant urges that his trial counsel was ineffective in not requesting mental health diversion.  To establish ineffective assistance of counsel, a defendant must prove that his or her (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant.  (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).)  If a defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails.  (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.)

We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions.  (*Maury, supra*, 30 Cal.4th at p. 389; *Strickland, supra*, 466 U.S. at p. 689.)  "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

The record is silent about why defendant's trial counsel did not request pretrial diversion.  Defendant says, without any record citation, that his trial counsel likely did not know about the newly-enacted section 1001.36.  But, as the Attorney General argues,

11

counsel could have elected not to request pretrial diversion because he had no basis for believing a mental disorder substantially contributed to defendant's commission of the charged offenses. Trial counsel could have consulted with defendant regarding pretrial diversion but defendant rejected the idea or refused to agree to comply with treatment. On this record, defendant has not established that his trial counsel's representation was deficient.

Defendant also fails in his burden to affirmatively prove prejudice. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "[T]he record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*Maury, supra,* 30 Cal.4th at p. 389.) Defendant must show a reasonable probability of a more favorable result. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218; *Strickland, supra*, 466 U.S. at pp. 693-694.) Because defendant has not established prejudice, his claim of ineffective assistance lacks merit.

## DISPOSITION

The judgment is affirmed.

    /S/
MAURO, J.

We concur:


    /S/
BLEASE, Acting P. J.


    /S/
HULL, J.

12